**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 13 |
| MARIA PONCE, | ) | |
| | ) | |
| | ) | Case No. 16-bk-40877 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable Timothy A. Barnes |

**NOTICE OF MOTION**

**To**: PennyMac Loan Services, LLC c/o Stanford Kurkland, Chief Executive Officer, 3043 Townsgate Road, Suite 200, Westlake Village, CA 91361-3027 (via Certified U.S. Mail);
PennyMac Loan Services, LLC c/o McCalla Raymer Leibert Pierce, LLC, ATTN: Dana O'Brien (counsel of record) (via ECF);
PennyMac Loan Services, LLC c/o Codilis & Associates, P.C., ATTN: Joel P. Fonferko and Peter Bastianen (counsel of record) (via ECF)
Chapter 13 Trustee (via ECF)

**PLEASE TAKE NOTICE** that on **January 6, 2022, at 01:30 p.m.**, I will appear before the Honorable Timothy A. Barnes, or any Judge sitting in his place, and present **Debtor's Motion for Sanctions Against PennyMac Loan Services, LLC for Violations of Fed. R. Bankr. P. 3002.1(c),** a copy of which is attached.

**This Motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video,** use this link: https://www.zoomgov.com/. (2) Enter the meeting ID  **161 329 5276** . (3) Enter the passcode **433658**.

**To appear by telephone,** call Zoom for Government at (669) 254-5252 or (646) 828-7666. (2) Enter the meeting ID **160 731 2971**. (3) Enter passcode **587656.**

When prompted identify yourself by stating your full name.

To reach Judge Barnes' web page go to www.ilnb.uscourts.gov **and click on the tab for Judges.**

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the Motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without hearing.

**MARIA PONCE**

By: *Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
*Counsel for Debtor*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Suite 200
Lombard, IL 60148
Phone (630) 575-8180
mbadwan@sulaimanlaw.com


**CERTIFICATE OF SERVICE**

I, Mohammed O. Badwan, certify/declare under penalty of perjury under the laws of the United States of America that I served a copy of this notice and the attached motion on each entity shown on this notice at the address shown and by the method indicated on the notice on November 30, 2021.

/s/ *Mohammed O. Badwan*

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 13 |
| MARIA PONCE | ) | |
| | ) | |
| | ) | Case No. 16-bk-40877 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable Timothy A. Barnes |

**DEBTOR'S MOTION FOR SANCTIONS AGAINST PENNYMAC LOAN SERVICES, LLC FOR VIOLATIONS OF FED. R. BANKR. P. 3002.1(c)**

**NOW COMES** MARIA PONCE ("Debtor"), by and through her undersigned counsel, and pursuant to Fed. R. Bankr. P. 3002.1(c) and (i), 11 U.S.C. §105(a), Fed. R. Bankr. P. 9020, and Fed. R. Bankr. P. 9014, bringing the instant Motion for Sanctions Against PennyMac Loan Services, LLC ("PennyMac") for Violations of Fed. R. Bankr. P. 3002.1(c), and in support thereof, stating as follows:

**NATURE OF THE MOTION**

1. The Debtor is likely one of many victims of PennyMac's systemic practice of violating the black letter of Fed. R. Bankr. P. 3002.1(c), which requires mortgage companies to disclose post-petition fees to the debtor, the debtor's counsel, and the Chapter 13 Trustee within 180 days of the assessment of the post-petition fees. Specifically, as set forth extensively below, PennyMac, without proper disclosure, charged the Debtor's mortgage loan post-petition fees *and* sought to collect the fees directly from the Debtor, and by extension the Debtor's bankruptcy estate. The assessment of the undisclosed fees exposes the Debtor and similarly situated bankruptcy debtors to the risk of being deemed in default immediately after the successful completion of their Chapter 13 cases.

1

2. As a result of PennyMac's practices, Debtor and other similarly situated bankruptcy debtors may never be deemed current after the successful completion of their Chapter 13 plans, and therefore never receive the fresh start contemplated by the Bankruptcy Code.

3. The Debtor brings this Motion to enforce compliance with Rule 3002.1(c) and to enjoin PennyMac from further non-compliance with Rule 3002.1(c).

## FACTUAL BACKGROUND

4. In July 2013, the Debtor executed a mortgage and promissory note ("subject loan") in favor of Bank of America, N.A.

5. The subject loan was obtained to fund the purchase of the Debtor's principal residence located at 3624 W. 56th Street, Chicago, IL 60629 ("subject property").

6. In March 2016, PennyMac acquired the subject loan.

7. In 2016, the Debtor filed a Chapter 7 bankruptcy and ultimately received a Chapter 7 discharge on June 15, 2016 (Case No. 16-08067).

8. The Chapter 7 discharge extinguished the Debtor's personal liability on the subject loan.

9. At the time the Debtor obtained her Chapter 7 discharge, the Debtor was in default on the subject loan.

10. On December 31, 2016, the Debtor filed the instant Chapter 13 case. [Dkt. 1]

11. Also on December 31, 2016, the Debtor filed a Chapter 13 Plan. [Dkt. 2]

12. The Debtor's Chapter 13 plan, proposed, *inter alia*, to (1) cure the default on the subject loan, and (2) make post-petition mortgage payments directly to PennyMac as they became due. *Id*.

13. At the time the Debtor filed her original Chapter 13 plan, the Debtor was $14,520.52 in arrears on the subject loan.

14. On April 4, 2017, the Debtor filed a Modified Chapter 13 Plan ("Modified Chapter 13 Plan"). [Dkt. 21]

15. The Debtor's Modified Chapter 13 plan, proposed, *inter alia*, to (1) cure the default on the subject loan, and (2) make post-petition mortgage payments directly to PennyMac as they became due. *Id*.

16. PennyMac did not object to the Debtor's Modified Chapter 13 Plan.

17. On April 6, 2017, the Bankruptcy Court confirmed the Debtor's Modified Chapter 13 plan ("Confirmed Plan"). [Dkt. 26]

18. From 2017 through December 2020, the Debtor made the vast majority of her post-petition mortgage payments to PennyMac.

19. On December 5, 2020, PennyMac issued a mortgage statement to Debtor that attempted to collect $250.00 in "Fees and Charges." The statement did not specify the basis for the "Fees and Charges."

20. In February 2021, the Debtor called PennyMac to discuss the subject loan.

21. During the call, the Debtor was informed that PennyMac assessed **$3,500.00** to the subject loan for "bankruptcy fees" that would need to be repaid.

22. Also during the phone call, the Debtor requested an itemization of the fees that PennyMac assessed to the subject loan.

23. In response, PennyMac's representative advised the Debtor that it will send the Debtor an itemization of the fees.

3

24. Despite its representation that it would send the Debtor an itemization of the fees, PennyMac never sent the requested itemization to the Debtor.

25. The phone call with PennyMac distressed the Debtor as she believed that the successful completion of her bankruptcy would render her current on the subject loan.

26. In January, February, and March 2021, PennyMac issued mortgage statements to the Debtor that similarly attempted to collect $250.00 in "Fees and Charges." The statements did not specify the basis for the "Fees and Charges."

27. In April 2021, PennyMac issued a mortgage statement to the Debtor that also attempted to collect $250.00 in "Fees and Charges." The statement did not specify the basis for the "Fees and Charges." The mortgage statement further reflected that PennyMac charged the subject loan $75.00 for "Foreclosure Fees" on March 26, 2021.

28. On May 5, 2021, PennyMac issued a mortgage statement to the Debtor that sought to collect $550.000 in "Fees and Charges." The mortgage statement contained a "Transaction Activity" itemization that reflected that PennyMac charged the subject loan $300.00 for "Bankruptcy Costs" on April 23, 2021.

29. Shortly after the assessment of the $550.00 for "Bankruptcy Costs," PennyMac began holding some of Debtor's full mortgage payments in a suspense account instead of immediately applying the payments to principal and interest as required by the Truth in Lending Act ("TILA").[1]

30. From June 2021 through the present, PennyMac issued an additional six (6) mortgage statements to the Debtor that similarly sought to collect $550.00 in "Fees and Charges." Some of the statements reflected that PennyMac was holding some of Debtor's full mortgage

---

[1] 15 U.S.C. §1639f(a) and C.F.R. §1026.36(c)(1)(i) require a mortgage servicer to credit full mortgage payments as of the date of receipt.

payments in a suspense account instead of immediately applying the payments to principal and interest.

31. At no point in time did PennyMac notify the Debtor, Debtor's Counsel, or the Chapter 13 Trustee of the post-petition fees that it (1) charged the subject loan, and (2) attempted to collect directly from the Debtor and the Debtor's bankruptcy estate.

32. As of the date of the filing of the instant motion, the Debtor is current on her post-petition mortgage payments and payments to the Chapter 13 Trustee.[2]

## CLASS ALLEGATIONS

33. The Debtor incorporates the preceding Paragraphs as fully set forth herein.

34. The Debtor brings the class allegations and claims pursuant to Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23, individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All individuals residing in Illinois (a) that filed a Chapter 13 case in the United States Bankruptcy Court for the Northern District of Illinois; (b) at any time in the last five years and through the date of class certification; (c) in which PennyMac held a security interest in real estate that served as the individual's principal residence; (d) in which PennyMac assessed post-petition fees, expenses, and/or charges to the individual's mortgage loan; (e) and failed to file a timely Notice of Fees, Expenses, and Charges as required by Fed. R. Bankr. P. 3002.1(c).

35. The following individuals are excluded from the Putative Class: (1) any Judge presiding over this action and members of their families; (2) PennyMac, PennyMac's subsidiaries, parents, successors, predecessors, and any entity in which PennyMac or its parents have a controlling interest and their current or former employees, officers and directors; (3) Debtor's attorneys; (4) individuals who properly execute and file a timely request for exclusion from the

---

[2] On November 9, 2021, the Chapter 13 Trustee filed a Motion to Dismiss Debtor for Failure to Make Plan Payments. *See* Dkt. 50.  Since the filing of the Motion, the Debtor has cured the default alleged in the Motion.

Putative Class; (5) the legal representatives, successors or assigns of any such excluded individuals; and (6) individuals whose claims against PennyMac have been fully and finally adjudicated and/or released.

### A. Numerosity:

36. The exact number of members of the Putative Class is unknown and not available to the Debtor at this time, but it is clear that individual joinder is impracticable.

37. Upon information and belief, PennyMac owns/services mortgages for hundreds of consumers who fall into the definition of the Putative Class.

38. Members of the Putative Class can be objectively identified from records of PennyMac to be gained in discovery.

### B. Commonality and Predominance:

39. There are many questions of law and fact common to the claims of the Debtor and the Putative Class, and those questions predominate over any questions that may affect individual members of the Putative Class. Common questions for the Putative Class include, but are not necessarily limited to the following:

   A. Whether PennyMac assessed fees, expenses, and charges to mortgage loans during a Chapter 13 bankruptcy without filing a Notice(s) of Fees, Expenses, and Charges as required by Fed. R. Bankr. P. 3002.1(c);

   B. Whether PennyMac attempted to unlawfully collect post-petition fees, expenses, and charges directly from bankruptcy debtors and their bankruptcy estates without filing the requisite notice prescribed by Fed. R. Bankr. P. 3002.1(c).

  C. Whether PennyMac systemically fails to file the requisite notices of post-petition fees, expenses and charges prescribed by Fed. R. Bankr. P. 3002.1(c).

**C. Typicality:**

40. The Debtor's claims are typical of members of the Putative Class because the Debtor and members of the Putative Class are entitled to relief as result of PennyMac's conduct.

**D. Superiority and Manageability:**

41. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

42. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

43. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

44. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E. Adequate Representation:**

45. The Debtor will adequately and fairly represent and protect the interests of the Putative Class.

46. The Debtor has no interests antagonistic to those of the Putative Class, and PennyMac has no defenses unique to the Debtor.

47. The Debtor has retained competent and experienced counsel in consumer bankruptcy litigation and consumer class action litigation.

### I.     PennyMac Should Be Sanctioned for Violations of Fed. R. Bankr. P. 3002.1(c)

48.     "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007).

49.     Fed. R. Bankr. P. 3002.1(c) requires the holder of a claim secured by a security interest in the debtor's principal residence to "file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence." Fed. R. Bankr. P. 3002.1(c).

50.     Fed. R. Bankr. P. 3002.1(c) further requires the notice to be "served within 180 days after the date on which the fees, expenses, or charges are incurred." Fed. R. Bankr. P. 3002.1(c).

51.     "Bankruptcy Rule 3002.1 ("the Rule") was promulgated in 2011, in response to a growing problem that had arisen in Chapter 13 cases throughout the country: debtors who had successfully completed their Chapter 13 plans, and paid all of their mortgage arrears and post-petition installment payments, would find themselves in renewed foreclosure proceedings due to undisclosed and unpaid post-petition charges and fees — a result clearly at odds with a debtor's right to a fresh start. To promote further transparency and more emphatically safeguard debtors' fresh starts, the Rule requires the holder of a claim secured by a Chapter 13 debtor's principal residence to file a detailed notice setting forth all post-petition fees, expenses, and charges it seeks to recover from the debtor." *In re Gravel,* 556 B.R. 561, 568 (Bankr. Vt. 2016).

52.     The Advisory Committee Note to Rule 3002.1 provides insight on the purpose of Rule 3002.1(c) as follows:

> [Rule 3002.1(c)] is added to aid in the implementation of § 1322 (b)(5), which permits a chapter 13 debtor to cure a default and maintain payments on a home

8

mortgage over the course of the debtor's plan. ... In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any pre-petition arrearage, see Rule 3001(c)(2), and the amount of the post-petition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust post-petition mortgage payments to cover any undisputed claimed adjustment.

Fed. R. Bankr. P. 3002.1 Advisory Committee Note (2011).

53. Pursuant to Rule 3002.1(i), the Debtor has a private right of action against PennyMac for its failure to comply with Rule 3002.1(c).

54. "Sanctions under Rule 3002.1(i) are permissive in that the court 'may' award them for a creditor's violation of subdivisions (b), (c) or (g)." *Alvarez v. Bayview Loan Servicing, LLC* (In re Alvarez), 2018 Bankr. LEXIS 4025, at *11-12 (9th Cir. BAP 2018).

55. PennyMac violated Rule 3002.1(c) by failing to notify the Debtor, the Debtor's counsel, and the Chapter 13 Trustee of post-petition fees that it assessed to the subject loan within 180 days of assessing such fees. *See* ¶¶19-28.

56. Upon information and belief, the Debtor is one of thousands of victims of PennyMac's systemic practice of assessing post-petition fees and charges without the required disclosure prescribed by Rule 3002.1(c).

57. As a result of PennyMac's failure to comply with Rule 3002.1(c), the Debtor and other similarly situated bankruptcy debtors were thrown into a perpetual state of confusion, fear, and uncertainty as to the prospective status of their mortgage loans upon the successful completion of their bankruptcy cases.

58. Moreover, upon information and belief, many bankruptcy debtors are deemed in default by PennyMac immediately after they successfully complete their Chapter 13 cases as a

9

result of the undisclosed post-petition fees that were assessed to their mortgage loans during the pendency of their Chapter 13 cases.

59.     Accordingly, it is imperative that the Court examine PennyMac's historical compliance with Rule 3002.1(c) to (1) protect bankruptcy debtors whom have a mortgage loan owned or serviced by PennyMac and (2) prevent future injury to such debtors.

60.     In the event the Court declines to sanction PennyMac pursuant to Rule 3002.1(i), the Court should issue sanctions pursuant to 11 U.S.C. §105(a).

61.     Specifically, pursuant to §105(a) of the Bankruptcy Code, the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *See* 11 U.S.C. §105(a).

62.     "A bankruptcy court has statutory authority under section 105(a) as well as its inherent powers to impose sanctions for misconduct." *In re Tabor*, 583 B.R. 155, 159 (Bankr. N.D. Ill. 2018) *citing In re Rimsat, Ltd.,* 212 F.3d 1039, 1049 (7th Cir. 2000).

63.     Here, there is no question that Rule 3002.1 is a *vital* debtor safeguard that warrants strict compliance and enforcement. Accordingly, the Court should exercise its broad and inherent powers under §105(a) and sanction PennyMac for its willful non-compliance with Rule 3002.1(c) and the bankruptcy process in general.

**WHEREFORE,** pursuant to Rule 3002.1(i) and/or 11 U.S.C. §105(a), the Debtor respectfully requests the following relief:

a. An award of compensatory damages to the Debtor in an amount to be determined by the Court for PennyMac's non-compliance with Rule 3002.1(c);

b. Assessment of punitive damages against PennyMac in an amount to be determined by the Court for PennyMac's non-compliance with Rule 3002.1(c) with respect to the Debtor to deter future non-compliance;

c. Awarding the Debtor her attorney's fees and costs;

    d.    An order granting certification of the Putative Class, including the designation of the Debtor as the named representative, and the appointment of the undersigned as Class Counsel;

    e.    Enjoining PennyMac from further non-compliance with Rule 3002.1(c);

    f.    An award of compensatory damages to the Putative Class in an amount to be determined at an evidentiary hearing after class certification and after members of the Putative Class are identified;

    g.    Assessment of punitive damages against PennyMac in an amount to be determined at an evidentiary hearing after class certification and after members of the Putative Class are identified for PennyMac's non-compliance with Rule 3002.1(c) with respect to the Putative Class; and

    h.    Any further relief that the Court may deem just and proper.

Dated: November 30, 2021

Respectfully Submitted,

/s/ *Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
*Counsel for Debtor*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave.
Suite 200
Lombard, IL 60148
Phone (630) 575-8180
Fax: (630) 575- 8188